# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 4:19-CR-1044 RLW |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| TIFFANY MCALLISTER, | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

**IT IS ORDERED** that the Emergency Motion and Supplement (ECF Nos. 72, 79) is: ☒ **DENIED** after complete review of the motions on the merits.

☒ **FACTORS CONSIDERED**.

The Court finds that Defendant has exhausted administrative remedies. Defendant filed an emergency motion seeking compassionate release based on extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i). Defendants states that she has the serious health conditions of heart failure and lupus, and the living conditions at Alderson FPC during the COVID-19 pandemic, which make it impossible for her to engage in social distancing, place her at particular risk of death or serious illness from COVID-19. Defendant asserts that the Bureau of Prisons ("BOP") commissary has not been open consistently for purchase of items like hand sanitizer, shampoo, or soap. Defendant states that the BOP is not providing adequate medical care, she has been forced to care for herself, and if she became ill she would have to wait for Alderson FPC to

authorize her to see an outside doctor. Finally, Defendant lists the sentencing factors of 18 U.S.C. § 3553(a), acknowledges "her underlying offense was serious," but asserts that as "an added measure of assurance that [she] will pose no danger to the public," the Court could impose a period of home confinement as a condition of her supervised release.

The supplement to Defendant's motion filed by appointed counsel states that as of the date of filing, February 23, 2022, Alderson FPC was reporting nineteen active COVID-19 cases, consisting of fifteen inmates and four staff. It also notes that Defendant's health conditions were known to the Court at the time of sentencing as they are evidenced in the record, and asks the Court to consider the materials in the record detailing her health conditions and concerns.

The United States opposes Defendant's motion, stating that Defendant was offered the Moderna vaccine and refused it. The Government concedes that individuals with heart disease and lupus face increased risks related to COVID-19, but asserts that in light of the availability of the vaccination to Defendant, these health conditions no longer qualify as a "extraordinary and compelling reason" warranting her release. The Government also states that Defendant fails to satisfy the separate requirement of showing both that she is no longer a danger to the community and that the mandatory sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of early release.

The Court will deny this motion. The Probation Office prepared a First Step Act Compassionate Release Report for the Court's use. This report provides the following information about Defendant's medical status:

> According to McAllister's Presentence Report dated June 26, 2021, USPO Abigail Korte verified that McAllister had previously been diagnosed with asthma, anemia, sleep apnea, congestive heart failure, and Hepatitis C. Additionally, McAllister also reported diagnoses of lupus and chronic obstructive pulmonary disease (COPD), but these diagnoses were not verified.
>
> According to the Bureau of Prisons medical records reviewed by the U.S. Probation Office on March 15, 2022, since January 1, 2022, McAllister has been treated

>and/or diagnosed with the following medical issues: anemia (unspecified), osteoarthritis of the knee (unspecified), other cholelithiasis with obstruction, pain in unspecified joint, vitamin D deficiency, unspecified mood (affective) disorder, posttraumatic stress disorder, essential (primary) hypertension, dissociative and conversion disorder, and unspecified abnormalities of breathing most likely secondary to morbid obesity.  Medical reports from the Bureau of Prisons prior to 2022 also show that McAllister has been diagnosed and/or treated for the following: opioid use disorder (moderate), conversion disorder with seizures or convulsions, hypokalemia, neuralgia, and neuritis (unspecified), high blood pressure, and anxiety.
>
>Since January 1, 2022, McAllister has been prescribed the following medications while in custody: Thiamine HCL 5 mgs daily, Vitamin D 50000 weekly for six weeks, Cyanocobalamin 1000 mg injection every two weeks, Duloxetine 20 mgs daily, Losartan 100 mgs daily, Albuterol inhaler 1 puff daily, Potassium Chloride 20 mgs daily, Amlodipine 10 mgs daily, Furosemide 20 mgs daily, Isosorbide Mononitrate 30 mgs daily, Atorvastatin 40 mgs daily, Nortriptyline 25 mgs daily, Prednisone 10 mgs daily, Zoloft 25 mgs daily, Hydrochlorothiazide 25 mgs daily, Potassium 99 mgs daily, Gabapentin 600 mgs daily, Amoxicillin 125 mgs twice daily, Triamcinolone 0.1% cream as needed, a multivitamin daily, and over the counter medications.
>
>McAllister refused the Covid-19 Moderna vaccine on October 27, 2021.  On January 10, 2022, McAllister tested positive for Covid-19.  On January 11, 2022, McAllister was counseled for monoclonal antibodies for Covid-19, but refused this treatment intervention.  On February 3, 2022, McAllister again refused the Covid-19 Moderna vaccine.

(ECF No. 89 at 1-2.)

Defendant rejected the opportunity to take the offered COVID-19 vaccine on two occasions and refused monoclonal antibody treatment against the recommendation of BOP medical staff, although she was informed that possible consequences of refusal were "worsening of COVID symptoms, hospitalization, ventilator support, death." (ECF No. 85-89 at 1.)  Defendant should not be released from prison based upon her claimed risk for contracting COVID-19 when she has refused to receive a highly effective vaccine, and refused treatment that could have reduced her symptoms and the risk of serious consequences when she did contract COVID-19. The Court finds

3

that Defendant's refusal to comply with recommended medical care, the COVID-19 vaccine, makes her ineligible for compassionate release.

In addition, the BOP medical records show that Defendant has received significant medical care in the relatively short time she has been incarcerated, including x-rays and an EKG, and was prescribed nineteen prescription medications in addition to multivitamins and over-the-counter medications.  There is no evidence to support Defendant's claims she has not been provided adequate medical care and must care for herself.  Defendant also has not demonstrated that the BOP is inadequate in managing the pandemic at Alderson FPC.  First, Defendant was offered the COVID-19 vaccine at Alderson FPC, but Defendant refused this mitigating effort.  Second, as of the date of this Order, BOP records show there are no inmates positive for COVID-19 at Alderson FPC and only one staff member is positive.[1]

Finally, the Court holds that Defendant has not established that 18 U.S.C. § 3553(a) weigh in favor of early release or that she does not present any danger to the community.  Defendant pleaded guilty to three counts of assisting in the preparation of a fraudulent return and three other counts were dismissed in return for her plea.  The case involved Defendant preparing and filing at least thirty-six false and fraudulent federal income tax returns with the Internal Revenue Service for clients between 2014 and 2017, resulting in a loss to the IRS of approximately $205,093.  Defendant prepared approximately 640 additional tax returns between 2014 and 2016 that included fraudulent education credits ranging between $933 and $3,000 per return, resulting in additional loss to the IRS of $715,761.  The total loss to the IRS was $920,854 in refunds paid out.  Defendant received between $100 and $1,290 for each tax return she prepared.  Defendant's criminal history category was III, and includes six convictions for Fraudulent Use of a Credit/Debit Device, one

---

[1] Federal Bureau of Prisons, COVID-19 Coronavirus page, https://www.bop.gov/coronavirus/ (last visited May 27, 2022).

Stealing conviction, one Theft conviction, and one traffic-related conviction.  Defendant was on probation when she committed the instant offense.

Defendant's crimes were serious, but the Court sentenced her at the low end of the Guidelines range to 37 months' imprisonment after considering her history of drug abuse, depression, anxiety, PTSD, Bipolar disorder, significant physical health issues, and other personal considerations.  Defendant's criminal history of multiple fraud convictions, the number of fraudulent tax returns she prepared over a period of years, the significant resulting losses her conduct caused, and the fact that she committed the instant offenses while on probation, all indicate she presents a danger to the community.  Defendant must serve her entire sentence as imposed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Emergency Motion for Modification in Sentence and Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as supplemented (ECF Nos. 72, 79) is **DENIED**.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 27th day of May, 2022.

5